Good morning. Judges Nguyen and Diaz and I are pleased to be hearing their cases today. Our first case on the docket is Rebecca Groves v. Communication Workers of America. Mr. Dunleavy. Thank you, Judge Keenan. This is what's been referred to as a hybrid Section 301 case. And that is a matter that arises in the unionized setting in which an employee sues her employer for violation of a collective bargaining agreement and also sues the union for violation of its duty of fair representation. In this particular case, my clients, Ms. Groves and Mr. Haddon, were fired by their employer, AT&T Mobility, for failing to meet sales metrics that were incorporated into their terms of employment. A couple months after firing my clients, the company realized that they had made a mistake as to the metrics and that Ms. Groves and Mr. Haddon and in total about 16 employees in different locations should not have been terminated. When the company discovered this error, it prepared a settlement offer, an alternative settlement offer to them, a small amount of back pay and reinstatement or a larger amount of back pay for those employees who had found other employment. The basic question that this case presents in light of the decision of the district court is, if the company waives its right to rely on limitations within the collective bargaining agreement and goes ahead and makes an offer of reinstatement, is the union insulated by those same limitations from any violation of the duty of fair representation that it might engage in in the succeeding period of time in which the settlements are discussed? And in this case, eventually, the settlements expired. Now, in the present case, the 45-day window had closed, but doesn't in terms of the ability of the plaintiffs to file agreements. But there still is a provision in the collective bargaining agreement. Is there not for informal grievances where there's no right of arbitration, but nevertheless a grievance can be filed? Did the plaintiffs ever pursue that, or did the union ever mention that to the plaintiffs? Right. There is such a provision in Section 7, Paragraph 8 of the agreement that essentially says if the 45 days have elapsed, then there's an opportunity for it to be pursued as an informal grievance. Basically what my clients did, Your Honor, is as soon as they found out that they had missed the deadline for accepting the settlement offer, they went to the union and asked to be permitted to file a grievance. And we would argue that that would be sufficient to put the union on notice that they were seeking whatever remedies might still be available under the agreement. The union never just explained to them that they did have this option of filing beyond the 45-day window? That's right. The union representative sent them e-mail correspondence saying the 45-day window is closed. You can take the offer that's still on the table or nothing. I would also point out in that same vein that there- What was the import of saying to the union we want to file a grievance if the 45 days is closed? Well, Your Honor, we would argue that the union had several options. First, the union could have filed it as an informal grievance pursuant to the section that we just discussed. The second issue is that in the union representative, Gerald Sauter's, affidavit, he actually confirms that the union would have had the option of presenting the timeliness issue to the arbitrator. And we would argue if that had been done, the arbitrator might well have concluded that there was an equitable tolling or equitable estoppel concept based on the fact that these individuals had no idea that their termination was wrongful until the company disclosed that there was an error in calculating the sales amounts. Did you consider filing a stand-alone claim as well as a hybrid claim? And if you did, what caused you to decide not to pursue it ultimately? Well, Your Honor, we felt that, of course, at the time we filed, we were seeking relief against both the union and the company because the reinstatement would have been up to the company. So we felt that this fit a lot better into the hybrid Section 301 context because we were seeking from the company reinstatement and to the extent that the company was unwilling or unable to provide complete monetary relief, we were seeking relief from the union for the delay that was caused by the union's neglect. You don't dispute that that is an option or was an option to file a stand-alone claim? We didn't think that that was a viable claim, a stand-alone claim against the union in that context because the union can't provide relief, can't provide the reinstatement. We felt like this was kind of a clear example, and we cited in our briefs other examples in which there have been hybrid Section 301 cases involved. But even in a hybrid 301 case, it's not the union that can provide reinstatement. It would be the employer, right? Right. So I don't see why that would be a bar to your filing a stand-alone claim against the union. And maybe it doesn't matter. Obviously, this claim rises and falls on its own merits, but I'm just curious. Right. Well, yeah, we thought that this, given that we were seeking relief at that time from both parties and looking at the elements of the Section 301 claim, this seemed to us to fit best in the Section 301 context. You couldn't do both? I mean, given the fact that to prove the 301, the hybrid case, you'd have to prove both that the employer had breached the contract and the fair representation and the independent? You don't have to do both? Or even after they settled, the company settled and reinstated them? Had the time passed for filing the independent action? Could we have then converted it or added a claim? Possibly, Your Honor. Why would you have filed a separate action altogether? You could have said, you know, I mean, had the time passed to file a separate action? I don't think. I mean, you see how critical this is because that hybrid claim is tied to both the employer's action as well as the union's action. You see the difficulty you have when you have a 45-day period that's gone. Nothing is coming because you waived everything under the contract at that point, as I understand, once the 45 days, what can you then say has been breached? Well, Your Honor, I mean, our position is that the 45 days is essentially it's at the company's option. The company has built into its collective bargaining agreement the option not to consider grievances after 45 days except to the extent that they consider it under the informal grievance process. The company, you know. But it's not a one-sided agreement is what I'm saying. I mean, it's both. It's not the company built in. It's the agreement, and the agreement is binding. And, of course, under federal law, that's the thing we look to. We do everything we can to keep these cases out of federal court. I mean, the cases are very clear on that. You've got to go to that agreement. Right. I understand, and I understand the federal policy favoring the grievance process and the collective bargaining process. But I would argue, although the contract is certainly binding on both parties, this particular term of the contract is essentially it's a right of the company. The company can say, after 45 days, we don't want to consider this. For whatever reason, the company decided not to exercise that right. The company said, you know, discovered this problem after the 45 days had expired. So the company said, we're going to make good nonetheless. The union said they didn't even know these people were fired. They never notified the union that they had been fired until after the 45 days. Right, and that may be. And we're not criticizing the union's conduct at that point in time. What we're saying is once the company made the offer known and once. . . That's outside of the 45 days. Once they make it known, I mean, I'm trying to get there with you, but if an employee is fired and, I mean, they're fired for a reason that they think is wrong because the statistics were wrong in terms of their sales, but they never told the union until long after. . . Well, maybe a month after this 45 days because that's when the company sort of finds out and they later find out later on. I mean, it seems that makes this a little bit different to me, doesn't it? It's different than the run of cases, no question about that, Your Honor, but. . . Our run of hybrid 301 cases. Right, but our position. . . Why is it different? Isn't that what the big problem here in this case is it is different. There's no other case that we know of that's like this? That's true, that's true, Your Honor, but. . . Because there's no grievance that's been filed in this case? Well, we did attempt to file a grievance, though. It was outside of 45. I'm sorry. I'm sorry, Judge. No, no, excuse me, I cut across you. No, no, go ahead. Well, what is relevant to that? What is your position? Are you saying that you were excused from exhaustion or you're saying that you did in fact exhaust? Are you saying you attempted but you're excused? Right. Or are you saying that you did exhaust? Yes, we're saying we attempted to exhaust. Under the case law that talks about it, it requires a good faith effort to utilize the contractual remedies, and we cited the Hines and Adkins case, among others, for that proposition. I'd also point to Day v. United Auto Workers out of the Sixth Circuit that held that the exhaustion requirement is subject to a common sense application to the facts of each case. And so our argument is, first of all, that we attempted to exhaust because as soon as we became aware that we were entitled to this relief, that there was a problem with the termination, we immediately asked to take advantage of the grievance. And why did you have to wait until the data came to you? I mean, wasn't the firing at least some evidence that something was amiss? Well, right, they could have filed grievances and just said we disagree with the fact we were fined. In fact, some employees did, did they not? Yes, Mr. Souder's affidavit indicates that there are some employees at other locations that did that. I would argue that that's not very good evidence that it should have been done in this case because we don't have any information about what those employees might have known. The only two employees covered by this local are my clients, and they had no information as to the numbers being inaccurate. So we would argue that under the Humphrey case, if we had filed grievances, they could have been and perhaps should have been dismissed out of hand because we had no basis for filing. And I don't think that the federal policy favoring collective bargaining is enhanced by giving the incentive to an employee to file a frivolous grievance any time something bad happens. We didn't have the information to have a colorable basis for filing a grievance. I'm not sure to me what the issue is with the metrics. I don't know that that's been explained in the record, but it would seem to me that your clients would at least have some inkling about their performance, some basis for perhaps contesting the view that, hey, we were doing what we were supposed to be doing. We did our work. We did our, you know, we proceeded with our sales. You don't need to have definitive evidence one way or the other. It's not a Rule 11 standard, is it? Your Honor, I'm not sure whether Rule 11 would apply, you know, by analogy. But there's nothing in the record, and remember this was resolved against us on summary judgment. I mean, there's nothing in the record that would suggest that either of them knew that they had a legitimate basis for a grievance. And so we would argue that based on that common sense standard, the fact that, you know, as soon as we were made aware, months later, as soon as we were made aware, we attempted to utilize the grievance procedures. That's all that's required under the case law. I would also point out as far as the merits of our claim, and Judge Kain didn't reach the merits of the case. What we argue happened is he sort of conflated this exhaustion requirement, which is not formalistic, it's not strictly applied. He equated that with the merits and said that essentially that we had to have a breakdown in the grievance process, a union misconduct in the grievance process, to have a Section 301 claim. And we don't believe that that's the case. But proceeding to the merits, the duty of fair representation is violated by arbitrary or perfunctory union conduct, discriminatory union conduct, or bad faith union conduct. And we argue the first and the third of those. As to arbitrary conduct, we think under the circumstances, if this doesn't qualify as arbitrary or perfunctory, I'm not sure what does. The union was specifically told by the company to reach out and communicate the offer. The company was not able to do that due to the restriction on direct dealing with employees. The company undertook that duty. It didn't go back to the union undertook that duty. It didn't go back to the company and say, we can't do this. Mr. Schauder undertook to do it. He communicated with Mr. Powell. Mr. Powell decided not to send a postcard, letter, e-mail, anything. And the union ultimately allowed two deadlines to pass without making any effort whatsoever to contact my clients. So we would argue that it doesn't get any more arbitrary or perfunctory than that. As to the union's position that negligence is permissible, the case laws in that area indicates that negligence is permissible when there's an exercise of judgment, but when it's merely an omission to take a ministerial act, that even negligent conduct can give rise to a breach of the duty of fair representation. Although it appears you're arguing that this is more than mere negligence. Yes. Yes, Your Honor. I mean, whether you characterize it as reckless, gross negligence, there was a clear obligation to notify our clients and no effort made to notify them. So we would say it goes beyond negligence. And finally, as to the bad faith element, that is a subjective test. That may not be something on summary judgment that we're entitled to a ruling as a matter of law, but it certainly shouldn't have gone against us as a matter of law because the record reflects that Mr. Souter knew that Mr. Powell had not made any effort to contact my clients. He asked for confirmation. He never got it. He then went back to the company and indicated to the company, well, we couldn't get in touch with these people. At the same time, his communications to my clients were, well, the 45 days have passed. You're out of luck. The 45 days have passed. The real problem was, of course, that we weren't notified of the right to accept one of these two offers  So, Your Honor, we would say that under the case law that indicates that self-interested conduct is sufficient to establish bad faith, we would argue that there's clearly self-interested conduct here, that there was a circling of the wagons when the union realized that it had essentially allowed my clients' rights to lapse. At that point, they were communicating in a way designed to cover themselves and not to ensure that we got the relief we were entitled to under the company's first offer. So we would argue that this case should be at least remanded so that a jury can hear these claims on the merits. But as to the arbitrary conduct standard, we think that that can be decided in our favor as a matter of law. I see I'm out of time. Thank you. Ms. Warren? Good morning, Your Honors. I respectfully request this Court to affirm the decision of the district court finding that plaintiffs failed to establish a section 301, a hybrid section 301 claim that the union defendants breached the duty of fair representation so as to prevent plaintiffs from exhausting their contractual remedies. You're saying the duty of fair representation ends when the formal grievance period of 45 days has expired? There's no duty after that? I think in these circumstances that is the case. Well, the CBA, though, provides for an informal process that does not guarantee you a right to arbitration, does it not? I mean, I think the informal process in the CBA has been misconstrued in this discussion. There is a formal grievance process. That is the grievance and arbitration process. It can proceed after the 45 days, can it not? Not a formal grievance. Without a right of arbitration, doesn't the CBA acknowledge that a grievance may be filed, the employer can disregard it, but it can be filed, can it not? No, Your Honor. I think what that provision provides is that, you know, there is this collective bargaining agreement in place and the union is the exclusive bargaining representative of these employees, but the parties don't want to take away an employee's right to have an informal discussion with their employer about their employment. The union can't stand in between every discussion they have about the terms and conditions. Does the CBA say that this provision has to be pursued by the employee only after 45 days has run? Is there anything specific in the language of the CBA that says that? I'm sorry, I'm not understanding the question. The employee can file a grievance after 45 days. I do not think the contract provides for that. Okay. What then is the provision in the contract that allows a communication of an employee's grievance, argument, whatever, without the right of arbitration? What do you call that procedure that exists after the 45-day window has closed? An employee has a right to make an informal grievance complaint, have a discussion with the employer about the involvement of the union at any time. Well, why not with the involvement of the union? What in the CBA says that the union will not participate in that informal discussion with the employer? Is there particular language in the CBA that absolves the union from any responsibility to participate on an informal basis after the 45-day window has closed? I mean, I think the language, the way that this section on grievance handling is construed is that there is a formal grievance procedure, and that has strict limits. Section 8 that has been referred to in the grievance procedure says, failure to submit or pursue a grievance under the conditions and the time and manner stated above, which has been discussed the 45 days, shall be construed as a waiver by the employee and the union of the formal grievance. Any complaint of this type shall be handled by the company as an informal grievance on an informal basis. Informal grievances are not subject to arbitration. So why couldn't the union have filed that on behalf of these employees, even though they didn't have the rights that they would have under the formal 45-day grievance procedure? The bargaining agreement clearly allows communication of a grievance on an informal basis after 45 days. And I think that happened in the e-mail discussions that Gerald Souder had with Ms. Groves and Mr. Haddon. You know, I can't remember which plaintiff said, can we now file a grievance? Mr. Souder said, no, the 45 days have passed. But he communicated to the company that, you know, I think that maybe we should, you know, you should reopen reinstatement as an option here because not everybody had the contact information for all these plaintiffs. And, you know, in the union, I mean, the company's response to Mr. Souder was they didn't file a grievance. End of discussion. So you're saying now that they did approach informally? I mean, I think there was an informal discussion by e-mail, and that's in the record. Well, then why didn't they exhaust? If there was an informal grievance filed by Mr. Souder to the employer, then why weren't the requirements of the contract met and exhaustion obtained by Mr. Souder's request to the employer? Because I think the informal grievance procedure, it's not truly a grievance. To me, no, it gets you. If the grievance was made by Mr. Souder on an informal basis, then the plaintiffs did exhaust. They did everything they could have done. I do not believe that's the state of the law. I mean, I think all of the arbitration cases, all of the jurisprudence in this area strictly holds on to those limits, those deadlines for filing, for accessing the grievance and arbitration procedure in a CBA, and that's across the board. I can't think of a single exception. Yeah. This seems to me to be such a classic gotcha, though, because the error on the part of the union not communicating, and surely you don't dispute that Mr. Powell should have contacted them. The error on the part of the union occurred after the 45-day window had closed. So why is this your defense other than a classic gotcha? It almost defies logic that you should be able to pull this out as a defense when your breach of the duty of fair representation, if any, occurred after the 45-day window had elapsed. Well, I wouldn't concede any of those points. I don't think that the plaintiffs stated a hybrid Section 301 cause of action. Do you think the union did everything it was obligated to do? I do not think that they breached the duty of fair representation. I don't think the duty arose, and I don't think the conduct of either. So Mr. Powell wasn't required to tell the employees, even though Mr. Souter told him to? He wasn't required under the duty of fair representation? Well, I don't think it arises. Mr. Souter, first of all, I want to clarify something. Mr. Souter is in no position of authority to Mr. Powell. So when does the duty of fair representation expire from your perspective? I mean, in these circumstances where an employee is terminated and they, through no fault of the union, just decided not to grieve their terminations, they did not access this wonderful benefit that a union employee has by virtue of a collective bargaining agreement where they can file a grievance and then the company has to establish, the burden is on the company to establish just cause for terminating them. They have this great benefit. They choose not to. Well, but of course they say that the reason why they chose not to do that is they didn't have the information, sufficient information to make out a viable, good-faith claim. But that's not how it works. If you are terminated, the company has the burden of establishing just cause for terminating you. You file a termination grievance. The company has to present to the union some evidence of why you were terminated. So you're saying there is no duty of fair representation after the formal grievance process time window has expired and has not been invoked. There is no duty. Is that your position?  They're no longer a covered employee by the collective bargaining agreement. And I don't think a duty arises where the union is not obligated to act. Let me ask you about the duty that arises here on the part of the union. In the instance of the 45 days, may the employee file the complaint or must it be the union that files it? No, the employee can initiate the grievance in a number of ways, but the standard way is to complete a statement of a complaint. The employee can initiate directly with the employer a grievance that would satisfy having filed a grievance under the CBA. Or must it also have the union as a part of filing that grievance? Do you understand what I'm saying? And where's an employee who's been fired? Could they just have filed this complaint within 45 days? I think if they filed a complaint with the employer, the employer would say you need to file a grievance with the union. That's because the union must file the grievance. Is that right? Within 45 days. That is the procedure. And so the point, you probably see where I'm going with this. If an employee is fired and the union never finds out about it, is there ever a duty that could be triggered by the union to file a grievance? No. And so why wouldn't an employer, I mean, in instances in which you're dealing with complaints, you've got to kind of let people know that something is there and now you've got 45 days to do something, but they've never even said a word to the union that these people have been fired. They just fired them and nothing happened. And when nothing happened after 45 days, the employer then discovers on its own we made a mistake. And as Judge Keenan says, you now say, got you. I didn't tell you I fired these people. We made a mistake. And what would prevent them from, if they had found out within 10 days we made a mistake, why in the world would an employer tell the union or tell anybody? Why not wait to 55 days? Because what you're telling us today, you cannot have a hybrid 301 claim at 45 days exhausted and you haven't filed a grievance. Isn't that exactly what you're telling us? Yes. So if that's the case, what would ever be the incentive for an employer, if you don't have to tell, why don't you just keep it secret? Fire your people and never tell anybody until 50 days have passed. Then you absolutely can't, at least the employer, can't get a hybrid 301, right? Correct. But I would note the way the process typically works is that— I understand the typical process, but this is not a typical case. What you've got is, I mean, this is the perfect storm, if you've ever seen one, I mean, in terms of the labor type situation. I'm not sure it was ever contemplated that it would happen in this fashion. But basically you've got a situation where you fired 16 people and you got a few of them. You did it for the absolute wrong reason. The statistics are wrong. No one knew this. And the union had no clue from what they said, and you haven't said they did, that they even knew these people were fired until it's too late to file agreements. So nothing triggered—what triggered the filing date for the 45 is the firing, but there's no notice. So you simply wait. You do nothing. You simply fire and nothing. And the employer, employee, cannot trigger the filing of a 45. They can only send it back to an employee, employer, who then could hold on to it for 50 days, and then the union could file all they want. It wouldn't be any good. I do think it's important to note that employees are provided copies of the collective bargaining agreement when they're hired, when at the time of their termination, if it's in a meeting. Employees are? Yes, yes. But the agreement is, do the employees sign the agreement? Do all 1,000 of those employees sign this collective bargaining agreement, or is it the union that signs it? It's the union. It's the international union. They read it. It would seem to me this is an agreement between the employer and the union. Why wouldn't the employer—how difficult would it be for the employer to say, we fired X, Y, and Z, and simply send that to the union? And that's it. But here, none of that was done. I don't understand that. I understand the 45 days. I understand how that works. But what that 45 days means is the fact that what you've answered, Judge Keenan, is 45 days ago there cannot be a hybrid 301 claim. That is your—has there ever been a case to say that, though? There's never been a case to say otherwise. I understand that because my question is there's never been a factual situation to present itself that we know of like this. Right. I'm not aware of a single case in the hybrid Section 301 area. But I would think if a case law was out there, it would say a hybrid 301 claim can only be filed if it's done in conformance with the collective bargaining agreement, and if it limits it to 45 days, it cannot be done. Right. The case law also says that an employee is—misapprehension of the terms of the collective bargaining agreement did not excuse an employee from filing their grievance within the required time. Let's get back. I'm sorry. Judge, when did— I just want to—one follow-up. And that's the nub of where I'm having a difficulty is the employee agreed, but the agreement is between the union and the employer. There is no notice to this union during the 45 days that an employer—now, if there's a duty and a part of the employee that arises by a common law to go and tell the union or do whatever is necessary is one thing, but the agreement is between—and the 45 days is dealing with the union and the employer, and the company hasn't said one word to the union. It would seem to me if you want to hold a union saying you can't file a grievance within 45 days, you tell them you've got 45 days. Nearly every other area of the law, if you're going to say 45 days is your drop-dead time, you have to say something has happened and you've got 45 days to act. But that—the initiation of the grievance starts with the employee. It goes through the union as the exclusive bargaining— I'm going to explain that. I'm going to riff you on that. But the employee is not a signatory of that contract. They're a beneficiary of the contract. Absolutely, and it comes through the union. And the union is the one that has the agreement, and no one has said a word to the union. Ms. Warren, if the employer had discovered this data issue within the 45-day period of—within 45 days of the employees being terminated, communicated that to the union and the union failed to advise the employees, would that be a claim under the contract? Arguably. Okay. Depending on the circumstances. Does it matter that the employer in this case is prohibited from notifying the employees directly that line of communication is foreclosed? Should that be a relevant consideration in deciding whether or not we should allow a hybrid claim under these circumstances? Well, I don't think so. There was no—there's no issue of communication within that 45-day period. The company or the plaintiffs have claimed that they— And is it at all relevant that there is a remedy, an alternative remedy, for a regular run-of-the-mill breach of fiduciary duty that the employees had available to them? Well, to answer that question, yes. There were other—I mean, my argument is on the merits. None would be successful because no duty arose. But procedurally, they could have chosen a different avenue. You said no duty arose on the part of—because we've got a union and we've got an employer here. A duty— The question is very good. I'm just trying to figure out which side are we talking about here. A duty didn't arise in these circumstances post the 45 days after the grievance where the union could have breached the duty of fair representation. The duty didn't arise. But in answer to your question—and I have lost the question. Judge Diaz was saying to you there were other avenues available. Procedurally. Right. And so you're saying there could have been a stand-alone claim. I think in this complaint, if there had been anything other than a Count I hybrid Section 301 claim, there could have been a Count II. Why didn't this simply become a stand-alone claim at the time the employer settled and was out of the suit? There was nobody left but the union. Excuse me. Yeah, there was nobody left but the union. And Brinegar says that the stand-alone claim, it's not a separate section. It derives from 9A. Why couldn't you simply have this be treated as a de facto stand-alone claim when the employer's gone from the suit? I think the breach of duty of fair representation has a separate jurisdictional basis under the National Labor Relations Act, whereas the breach of contract claim against the union is 301 of the LMR. Right, right. But I think that both have access to the federal court. But when you've specifically pled hybrid Section 301, that has meaning. And if you fail— Actually, you have no claim against the employer anymore with regard to—I mean, the employer's settled. The employer's out of the suit. You're saying it can't be treated as a de facto claim of the breach of the duty, a stand-alone claim of the breach of the duty of fair representation? No, not when it hasn't been alleged. Do you have any cases that say that? We're sort of in uncharted waters. There are no cases that say otherwise. There are none that convert that cause of action. So that leaves us free to be able to say it then. And none have said one way or the other. You're saying is that what you mean? Yeah. I mean, nothing says we can't is what you're saying. Right? No. I think the weight of 50, 60 years of jurisprudence in this area would advise against it. No one has in 50 or 60 years seen a case like this. Right? I have not seen a case like this. It was decided by the Court of Appeals. Yeah. So you've just said we can decide it like we want to. I have not said that. You said there's nothing that prevents us from deciding it in that manner. Because there's no case law on it either side. No. I'm not giving in on that point. I just do not think it would make sense in terms of the great weight of jurisprudence on hybrid Section 301 claims and the duty of fair representation. But even an independent action here wouldn't have gotten the job back. Not in my opinion. That's right. And they wanted their job back and something was done wrong by the employee, employer, in the first instance. Yeah. And by the time they get their notice out, the time is already gone, and they can't get the job back. But as Judge Keenan says, they get their job back, now all that's left is the question of fair representation, which you say starts post-45, because I guess there's not been an allegation that there was a duty for that union to go and know that they'd been fired, a duty to check statistics when you've got 16 people been fired, that in fact these statistics were wrong. That duty is not there, I take it. Well, there was no duty and there was also no power. The union couldn't do anything to affect the rights of the employees. They can't find out or ask the employer to know who's been fired every month? They can't do that? But that's not the question. That's my question. Can a local union ask who's been fired? Yes, but there's no reason to file a grievance on behalf of everybody who's been fired if they don't come to the union. But you're talking about a duty, and if they're representing individuals based and going to be limited by collective bargain agreement that the union has signed, why wouldn't a union have a duty to represent their people once they've been fired for a reason that's flatly wrong, or a duty to find it out? There's no... They can do nothing. I mean, what do you need a union for? If you can get fired and the statistics are wrong, you can fire a thousand people, statistics are wrong, the union doesn't even try to find out. They don't know a thousand have been fired or 16. They make no indication, and if they find out, they don't then go and say, what was the reason, and they say statistics. They don't check the statistics. But only two individuals in this local... If a lawyer did something like that, you'd have a malpractice action. But only two individuals in this local were terminated, and those employees have a duty to contact the union. It is their right to request. How many individuals were working in that local? I don't have that number. Because that kind of makes... I mean, you said only two, so they accepted the dues of these two. Why wouldn't they represent them and know that these people, they should have known this. They should have known something, made some inquiry. Would the union have the right and authority to file a grievance without the consent of the employees? Is that... No. So the employees would have to come forward to the union. Yes. And that did not happen here. Right. What was the first... The union would not have a right to know that an employee has been fired? I'm sorry, I didn't... What was the first thing that you said the union wouldn't have a right to do? What I was trying to say is... I want to know what you just answered to right then, yes. Just repeat it. I didn't remember. I didn't pick up on it. The question I asked was whether or not the union could file a grievance without the consent of the employees. And your answer was? In a discharge case, no. I mean, a union can file their own grievance to an argument about the interpretation of contract language. They can pursue their own avenues. All right. Thank you very much. Thank you. Your time has expired. Mr. Dunleavy, do you have a rebuttal? I just want to emphasize, and there's been a lot of discussion of the fact that there isn't a case on point one way or the other. And there is, I think, an area in which new law needs to be made either way. But I want to emphasize that although we don't have anything quite on point, the elements of the hybrid Section 301 claim would appear to cover this scenario. And just to reiterate, we are required to make a good-faith attempt to exhaust the grievance procedures. What was the duty on the part of the union? What duty, and make your allegation, what duty did they reach in terms of fair representation? What didn't they do? Failing to notify my clients. After the 45 days. Right. Is there any basis to evade an allegation that the union had a higher duty because it represented these employees? And when they were fired, they have a duty to know when people are fired because it triggers a 45-day window, and they have a duty to then tell them you've got 45 days to file a grievance. But you can't do it if you don't make, if the union doesn't go out and make these things known. I mean, it's like representing someone you don't care. You just say, well, I don't know if you've been fired or not. Just send me your dues money every month. And, you know, after 45 days, if you're fired, you didn't tell me, so tough luck. Right. I think that's important. I think that's important background in this case. I can't stand here and tell you that our claim is that they did something wrong within the 45 days. But it seems to me just, I mean, you didn't go in that avenue, and I'm just wondering. That's, to me, a union is not just someone who's receiving money. They are representing a person, and they made this agreement because that employee did not sign that agreement that limits the right of this employee. And yet they didn't do this. And, Your Honor, I think that's important context for what happens once the company makes this offer. Our argument is they made a good faith effort to exhaust, and then the Section 301 hybrid claim, which, by the way, can be brought against either the employer or the union. You have to prove both, but you don't have to sue both. You don't have to sue both. So we've proven both. We've proven a breach of the fair representation in that there was no effort made to notify them. And we've established, and there's really no question, that there was a violation of the CBA, that the terminations were for without cause under the CBA. So we have a good faith effort to exhaust, breach of the fair duty of representation, violation of the CBA. That's all under the hybrid Section 301 concept. That's all we have to prove. Thank you, Your Honor. All right, sir. Thank you.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Albert Diaz